Rosenberry Brothers Lumber Co. and Pennsylvania National Mutual Casualty Insurance Company, Insurance Carrier, Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and William F. Price, Respondents.

Argued February 2, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*George S. Black,* with him, of counsel, *Black & Davison,* for petitioners.

*Kenneth E. Hankins, Jr.,* and *James N. Diefenderfer,* for respondents.

OPINION BY JUDGE CRUMLISH, JR., June 23, 1978:

Rosenberry Brothers Lumber Co. (Employer) and Pennsylvania National Mutual Casualty Insurance Company (Carrier) appeal a decision of the Workmen's Compensation Appeal Board (Board) upholding a referee's award of benefits to William F. Price (Claimant).

The uncontroverted facts are as follows. While in the course of his employment as a lumberman on September 24, 1975, Claimant bent over to pick up a chain saw. As he stood up, he felt a sharp chest pain. After resting briefly, Claimant notified his foreman who took him home. Claimant did not return to work thereafter but was admitted to the hospital on September 27, 1975. He testified that chest pains had continued on the two days prior to his admission to the hospital. He was treated both in the hospital and sub-

sequent to his release by Dr. Dittmar who testified on Claimant's behalf at the hearing before the referee.

Dr. Dittmar testified that after his initial examination, he was able to diagnose Claimant's complaint as "anterior lateral myocardial infarction, acute." He further stated that Claimant was a high risk subject for heart disease based on his evaluation of Claimant's personal and medical history. This witness next described one possible cause of myocardial infarction, namely the Valsalva effect, which he described as a result of the increased pressure on an individual's arteries. Dr. Dittmar, in response to a question of Claimant's attorney as to whether or not the Valsalva effect could have resulted in Claimant's condition, testified:

> First the man is a risk. . . . Add to that the risk of diabetes out of control [from which Claimant suffered], because the man had no treatment for diabetes at that time. Add to that he had been working, I don't know the work, but this occurred just around noon. Second he presented the history of not bothering to eat lunch. He kept on working. We never took account of lunch. He is working hard. He bends over to pick up a heavy chain saw; and as he did so, and this is my reason for using the Valsalva effect, he has a stout tummy . . . he bends over causing pressure down to the ground to pick it up. That *may* have been the impetus that started this chain of events going, and he fell to the ground immediately. . . . (Emphasis added.)

On cross-examination, after recognizing that he did not see Claimant until three days after the occurrence described above, Dr. Dittmar was asked the following:

> Then since there is this interval, anything could have happened between the 24th and 27th to put

him in the condition in which you saw him. Is that correct?

Dr. Dittmar replied:

That's entirely possible.

Shortly thereafter, the doctor was asked if he could express an opinion as to whether Claimant's heart condition was work-related. He responded, "I won't make that statement."

Again, on redirect, Dr. Dittmar testified:

There again it would be based upon what the facts were and the added risk of diabetes out of control, the fact that he did not eat lunch and after working several hours bending over and lifting this saw *could have been* that little push that caused that blockage. (Emphasis added.)

On recross, Employer's attorney continued with this line of questioning:

Q. It could have been any number of things not noticeable that day that triggered it. Is that also correct?

A. It could be.

On appeal from the referee, the Board stated:

In a review of this record, we find that the Claimant's treating physician was not equivocal in his diagnosis and the cause of his diagnosis, that is, the events related to him by the Claimant.

Accordingly, the Board affirmed the referee's award of benefits.

Upon appeal to this Court, Employer and Carrier submit that the testimony of Dr. Dittmar is insufficient as a matter of law under the present case law of this Commonwealth, to establish the necessary causal connection between the injury and the alleged

work-related incident. Claimant relies upon *Workmen's Compensation Appeal Board v. Bowen*, 26 Pa. Commonwealth Ct. 593, 364 A.2d 1387 (1976), to support its position.

> In *Bowen, supra,* we recognized that
> it is well settled that where no obvious causal relationship exists [between the work activities and the injury] it must be established by unequivocal medical testimony.

26 Pa. Commonwealth Ct. at 596, 364 A.2d at 1389. Clearly, as all parties recognize, such is the case at hand. In *Bowen,* we went on to add that

> [a]n examination of cases where the injury suffered was a heart attack, however, reveals that medical testimony need not be given in such cases with unqualified certainty.

26 Pa. Commonwealth Ct. at 596, 364 A.2d at 1389. As we indicated later in the same opinion, we merely meant to clarify our position that we did not believe that

> the mere absence of the magic words 'his work caused his heart attack' should necessarily preclude the recovery of benefits....

26 Pa. Commonwealth Ct. at 598, 364 A.2d at 1390. We did not by this language intend, as Claimant now argues, to diminish the effect of our firmly entrenched doctrine that in the absence of an obvious causal connection, unequivocal medical testimony must be presented. We meant only to abolish the notion that certain "magic words" were required to establish the connection.

Since our thorough review of the record reveals that the medical testimony is far from unequivocal, we can reach no conclusion but that the Board erred as a matter of law, and we are therefore constrained to reverse.

288

Accordingly, we

ORDER

AND Now, this 23rd day of June, 1978, the decision of the Workmen's Compensation Appeal Board is reversed.