Wilkes-Barre, City, Petitioner v. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Daniel W. Scott, Respondents.

Argued September 8, 1980, before Judges WILKINSON, JR., ROGERS and CRAIG, sitting as a panel of three.

*Ralph J. Johnston, Jr.,* with him *James P. Harris, Jr., Harris and Johnston,* for petitioner.

*Martin J. Meyer, Mack & Meyer,* for respondent, Daniel W. Scott.

OPINION BY JUDGE WILKINSON, JR., October 9, 1980:

Petitioner, Wilkes-Barre City (City), appeals from an order of the Workmen's Compensation Appeal Board (Board) affirming the referee's award of benefits for total disability beginning May 12, 1977 and continuing indefinitely thereafter under Section 108 (o) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1 of the Act of October 17, 1972, P.L. 930, *as amended,* 77 P.S. §27.1(o).

Claimant was employed as a fireman by the City from October 6, 1950 until May 12, 1977, with the exception of a 16-month tour of duty with the United States Navy. He attended 40-50 fires per year and approximately 1,000 fires during his years of service for the City. It is undisputed that claimant was exposed to smoke, gases, and fumes throughout his entire career as a firefighter, and was hospitalized on two

occasions for smoke inhalation. In addition, claimant was given oxygen or other treatment some 40 to 50 times at the scene of the fires for overexposure to heavy smoke. Claimant also served as a training officer and line chief in addition to his duties as a firefighter and as a line chief was required to work additional shifts during the summer months to fill in for vacationing firemen. On September 6, 1975, claimant suffered his first heart attack while at home after working 28 straight days during August without any time off. Claimant was hospitalized for approximately two weeks and subsequently returned to work as a firefighter and line chief in January of 1976 performing the same tasks he had done in the past. In March of 1977, the claimant was hospitalized for five days as a result of smoke inhalation and did not return to full employment until approximately May, 1, 1977. Claimant last worked on May 9, 1977, and suffered a second heart attack while at home on May 12, 1977.

Upon the claimant's subsequent application for benefits for total disability, the referee found that the claimant's heart attacks were a work-related injury suffered while in the course of his employment and precipitated by the hazards of his many years of firefighting. Total disability benefits were granted commencing May 12, 1977. The City appealed to the Board which affirmed the referee's decision. City appealed.

The sole issue on appeal is whether the claimant has presented unequivocal medical testimony that his employment caused his heart attacks and resulting disability. The City argues that the testimony given by claimant's treating physician was general testimony about the effects of firefighting on the heart muscle and therefore insufficient to satisfy claimant's burden of proof. While we agree with the City that certain portions of the medical testimony presented by the claimant could be construed to be equivocal in na-

ture, a careful reading of the entire testimony convinces us that it was the treating physician's unequivocal opinion that the claimant's heart attacks were indeed a result of his employment. For that reason we must affirm the order of the Board awarding benefits.

In a case such as this, where an obvious causal connection between a work incident and a resulting injury is lacking, the standard for recovery of benefits requires that unequivocal medical testimony be introduced by the claimant. *Kosobucki v. Workmen's Compensation Appeal Board*, 49 Pa. Commonwealth Ct. 327, 410 A.2d 1315 (1980). The record here reveals the claimant's medical witness, Dr. Sherman, testified that the repeated exposure to the hazards of firefighting contributed to or aggravated the heart attacks and coronary artery disease from which the claimant now suffers.[1] The City highlights the fact that Dr. Sherman used the words "most likely," "somewhat," and

---

[1] Several significant passages from Dr. Sherman's testimony are as follows:

Q: Would you agree that oxygen requirements of an individual would increase when a person is active?

A: Definitely.

Q: How does that statement tie in to the circumstances with a fireman being exposed to smoke, fumes and gases?

A: Fumes, gases and smoke, these would all be detrimental to the coronary arteries.

Q: And whether or not, again based on reasonable medical certainty, can you give me an opinion as to whether the exposure to smoke and fire over a period of twenty-seven years as described contributed to or aggravated his first heart attack in 1975?

A: Yes.

Q: It did.

A: Yes.

Q: And whether or not, based on reasonable medical certainty, doctor, the exposure to smoke and fire over a period of twenty-seven years contributed or aggravated the heart attack from which this man suffered in May of 1977.

A: Most likely it did.

"probably" at different points during his testimony in response to questions aimed at establishing the causal relationship between claimant's employment and his heart attacks. While the medical testimony must be unequivocal to support an award of benefits, " 'we did not believe that the mere absence of the magic words "his work caused his heart attack" should necessarily preclude the recovery of benefits.' " *Rosenberry Brothers Lumber Co. v. Workmen's Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 283, 287, 387 A.2d 526, 527 (1978), (quoting *Workmen's Compensation Appeal Board v. Bowen,* 26 Pa. Commonwealth Ct. 593, 598, 364 A.2d 1387, 1390 (1976)). In *Rosenberry, supra,* we also pointed out that " '[a]n examination of cases where the injury suffered was a heart attack, however, reveals that medical testimony need not be given in such cases with unqualified certainty.' " *Id.* at 287, 387 A.2d at 527, (quoting *Bowen, supra* at 596, 364 A.2d at 1389). This Court has also held that a medical witness's entire testimony must be carefully reviewed before deciding if a causal relationship exists. The final decision should not rest upon a few words taken out of the context of the entire testimony. *Martinique v. Workmen's Compensation Appeal Board,* 45 Pa. Commonwealth Ct. 67, 404 A.2d 778 (1979). In view of our careful analysis of the record, we are of the opinion that the medical testimony taken as a whole was unequivocal, and that the claimant should not be denied benefits because of his physician's choice of words. There was no other medical testimony offered by either party.

The City also argues that the claimant's evidence was equivocal because Dr. Sherman admitted on cross-examination that the claimant suffered from diabetes, obesity, and high cholesterol. While this Court is cognizant of the fact that diabetes, obesity, and high cholesterol can contribute to coronary artery disease,

such preexisting maladies do not preclude our finding that the medical testimony was unequivocal. *Martinique, supra.* In *Martinique,* we found the medical evidence to be unequivocal based on our reading of the entire testimony, despite the fact that claimant had a preexisting coronary artery disease and a history of heart attacks.

Accordingly, we will enter the following

### ORDER

AND Now, this ninth day of October, 1980, the order of the Workmen's Compensation Appeal Board, dated March 23, 1979, to Docket No. A-75820, is hereby affirmed and it is ordered that judgment be entered in favor of claimant, Daniel W. Scott and against petitioner, Wilkes-Barre City and/or its insurance carrier, in the amount of $199.00 per week beginning May 12, 1977 and continuing indefinitely thereafter into the future all in accordance with the provisions of The Pennsylvania Workmen's Compensation Act.

All deferred compensation payment shall bear interest at the rate of 10 percent per annum from the date thereof.

The petitioner and/or its insurance carrier is also directed to pay any and all medical bills incurred by the claimant which were necessary in treating claimant's work-related injuries.

Counsel fees in the amount of 20 percent of all compensation due up to the date of this decision are hereby approved. The petitioner and/or its insurance carrier is directed to pay to Martin J. Meyer, Esq., 11 West Union Street, Wilkes-Barre, Pa., counsel fees in the amount of 20 percent of all compensation due up to the date of this decision and to be deducted from the compensation due the claimant. Counsel fees are to be paid directly to said attorney and the balance of said compensation to be paid directly to the claimant.